UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-81180 Civ (Cooke/Brown)

NORBERTO PIETRI,

   *Petitioner*,

v.

FLORIDA DEPARTMENT OF
CORRECTIONS, *et al.*,

   *Respondents*.

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

  This order adjudicates Norberto Pietri's Petition for a Writ of Habeas Corpus asking this Court to reduce his capital murder sentence. Florida state courts, including the Florida Supreme Court, have denied Pietri's request numerous times in the appeals process. Pietri now appeals to this Court under 28 U.S.C. § 2254.

  With the Court's permission to enlarge the page limit, Pietri filed a 113-page Petition for Writ of Habeas Corpus along with a 75-page Memorandum of Law. The Government rebutted with a 106-page response, also filed with the Court's leave. Petitioner Pietri declined to reply. The Court has carefully reviewed all the filings and record evidence, and, as explained below, finds no basis for granting the writ.

**I.  Procedural History**

  In August 1988, Petitioner Pietri admittedly shot and killed West Palm Beach police officer, Brian Chappell. Pietri was tried and convicted of first-degree murder by a

jury. By an 8-to-4 vote, the jury recommended capital punishment. The trial judge agreed with the majority, and sentenced Pietri to death.

Pietri has appealed his capital punishment sentence in numerous venues without success. The Florida Supreme Court was the last to reject the appeal. On several of the claims, Pietri has exhausted his state court options, and now, seeks a writ of habeas corpus mitigating his punishment from this Court.

**II.    Facts**

In August 1988, Pietri was serving a sentence at the Lantana Community Correctional Work Release Center for a crime unrelated to this petition.[1] On August 18, 1988, while awaiting transfer to a more secure facility, Pietri escaped and embarked upon a deadly crime spree. He testified that after his escape he went on a four-day cocaine binge, choosing burglary for income, and automobile theft to secure transportation.

On August 22, 1988, Pietri consumed the last of his cocaine. Around 10:00 a.m. the same day, to secure more cocaine, Pietri drove a stolen pick-up truck to a house, broke in, and stole several items, including a 9-mm semi-automatic firearm and a .38 caliber revolver. After the burglary, Pietri sped away in the stolen truck. Less than an hour after the burglary, Officer Chappell spotted the speeding truck and gave chase. At Officer Chappell's behest, Pietri stopped after about a mile.

Witnesses testified that Officer Chappell approached the stopped truck with his gun holstered. Once the Officer got within two to four feet of the truck, Pietri shot him in the chest. Forensics later confirmed that Officer Chappell was, in fact, shot from a distance of three to eight feet away with a 9-mm gun. The casing of the bullet was

---

[1]The facts are taken from the record at trial.

identical to the casings of the remaining 9-mm bullets found at the house from where the gun was stolen.

Before succumbing to the chest wound, Officer Chappell radioed for help. The first officer to arrive at the scene stated that the Officer Chappell's gun was still in its holster.

After shooting Officer Chappell, Pietri sped away to his nephew's house. With his nephew's help, Pietri dumped the stolen truck in a canal off of Florida's Turnpike. When police later recovered it, Pietri's fingerprints were found on the driver's side window. Pietri then left his nephew's house, but first exchanged the stolen .38 caliber handgun for his nephew's .25 caliber automatic handgun. The nephew testified that Pietri had appeared normal the morning of the shooting.

A couple of days later, Pietri stole another car and resumed his criminal escapades. By now, Officer Chappell's death had prompted an intense search for his killer. Pietri was the prime suspect. On Wednesday, August 24, 1988, at approximately 6:30 p.m., police spotted Pietri at his sisters' apartment but were unable to apprehend him. Later that same evening, an off-duty officer spotted Pietri in a tree at a church. The officer directed Pietri to come down. Rather than complying, Pietri threatened to shoot the officer, jumped the officer when he went for cover, and escaped yet again.

About three hours after Pietri was spotted at his sisters' apartment, a couple and their five-year-old son were in their car in the driveway of their home. The father realized he had forgotten something in the house and ran in for a minute. Unbeknownst to the family, Pietri was watching. As soon as the father left, Pietri forced himself into the car and ordered the mother to drive, threatening to shoot her if she did not comply.

3

When she hesitated, Pietri pushed her out of the car and began backing out of the driveway with the child still in the car. By now the father had emerged and was able to pull the child out of the car before Pierti absconded with the couple's car. Pietri appeared to slow down a bit to let the father remove the child. Nonetheless, Pietri was again on the streets with a stolen automobile.

Shortly thereafter, another officer spotted Pietri in the couple's stolen car. Pietri stopped and waved the Police officer to the car. As the officer approached with his gun drawn, Pietri sped off. Two other officers picked up the chase. Pietri was determined to escape, taking the police to over 100 miles-per-hour speeds. Eventually, Pietri lost control of the car, but he was able jump out and began running on foot. Police chased after him. While running, Pietri pulled out a bag of cocaine from his pocket and put it in his mouth. Delray Beach officer, Michael Swigert finally caught Pietri and arrested him.

In his own defense, Pietri testified that he was a cocaine addict who financed his habit through crime. Pietri admitted to shooting Officer Chappell at close range. He maintained, however, that he is blind in his right eye, and that he did not intend to kill Chappell. Pietri insists he did not aim for the officer's heart when he shot him in the chest at almost point-blank range. At the time of the shooting, many hours had passed since Pietri's last cocaine use.

Defense trial counsel initially intended to hold the state to its beyond-a-reasonable-doubt burden. Shortly before trial, however, Pietri confessed to his attorneys that he did, in fact, shoot the officer. Counsel then changed his strategy to proffer evidence for a defense aimed at avoiding first-degree murder for second-degree murder—namely, that Pietri simply reacted in panic and fear, never intending to actually

4

kill Officer Chappell. Voluntary intoxication was left as a distant backup defense. Pietri testified at trial. Trial counsel believed that building rapport with the jury was Pietri's best chance of avoiding capital punishment. On February 7, 1990, Pietri was convicted of first-degree murder.

The penalty phase began two weeks after the first-degree murder conviction. Pietri presented the testimony of six lay witnesses and two mental health experts. The lay witnesses were four of Pietri's siblings, Yoris Santana, who was with Pietri on the days leading up to the murder, and minister Roger Paul. The experts were Jody Iodice and Glen Caddy.

Pietri's siblings gave anecdotal accounts of Pietri's violent, alcoholic father, who would beat their mother on a daily basis and who eventually abandoned the family. They said that Pietri was a good brother when he was not on drugs. They also confirmed that Pietri had experienced trouble with his right eye since childhood, eventually losing sight in that eye.

Yoris Santana corroborated the family's testimony regarding Pietri's chronic drug use. She also provided detailed evidence of Pietri's drug use for the four days leading up to the murder. Reverend Paul testified that in the period between the shooting and trial, Pietri had undergone a religious transformation, which, in fact, led him to admit to his crime. The Reverend testified that Pietri was now a changed man who felt deep remorse for his crime.

Expert Jody Iodice does social work with recovering drug addicts and is a recovering addict herself. She testified about the general characteristics of a person who may be predisposed to drug abuse. She spoke of the powerful adverse effects of cocaine

5

on the mind, but stated that it was possible for someone under the influence of cocaine to make cognitive decisions and remember events.

Dr. Glen Caddy testified as Pietri's mental health expert. He met with Pietri for three-and-a-half-hours to discuss Pietri's circumstances. Dr. Caddy explained that Pietri's upbringing made him susceptible to drug abuse. Dr. Caddy opined that Pietri had average intelligence, was not psychotic, knew the difference between right and wrong, and knew that it was wrong to kill. Caddy also stated that there was some possibility that Pietri could have been under the influence of cocaine at the time of the murder, and thus, his judgment may have been impaired.

During the penalty phase, Defense trial counsel also argued eleven mitigating factors, including two statutory mental health mitigators involving Pietri's extensive cocaine use; the fact that Pietri's previous crimes had been non-violent, he was not a cold-blooded killer; in lieu of death, Pietri would receive more than life in prison with the possibility of parole after twenty-five years; Pietri was a product of an abusive home, including physical and sexual abuse, and that he was a good and productive man underneath; and, Pietri was extremely remorseful for his actions.

The jury considered the Defense's arguments, but recommended capital punishment, nonetheless. The Judge followed the jury's recommendation upon a finding of four aggravating factors with no mitigation: (1) Pietri committed murder having escaped from a sentence of imprisonment; (2) Pietri committed the murder while fleeing from a burglary; (3) Pietri committed homicide in a cold, calculated, premeditated manner without any pretense of moral or legal justification; and, (4) the murder was

perpetrated on a law enforcement officer to prevent the officer from performing his official duty and to escape imminent arrest.

During post-conviction appeals, Peitri presented an exhaustive list of bases for reversal, many of which the previous courts, including the Florida Supreme Court, rejected. Pietri's petition in this Court gives a similar, general laundry list.

### III.     The Legal Standard

#### A.     *Habeas Corpus Law*

Pietri's petition, filed in 2004, is governed by 28 U.S.C. § 2254 as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). The United States Supreme Court interpreted the relevant statutory portion in *Williams v. Taylor*, stating that § 2254(d)(1) limits a federal court's power to grant a writ of habeas corpus on claims adjudicated on the merits in state court. 529 U.S. 362. A writ may issue only if the state court adjudication was either (1) contrary to, or (2) an unreasonable application of clearly established federal law as determined by the U.S. Supreme Court. *Id*. The Eleventh Circuit has held that under the AEDPA, a final state judgment must be given high deference. *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002)

A state court may be reversed under the "contrary to" clause if it arrives at a conclusion opposite to clearly established federal law, or decides a case differently from the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 412-13. The "unreasonable application" clause may be used to grant habeas relief if the state court unreasonably applies a correctly identified legal principle to the prisoner's

7

case. *Id*. Importantly, for reversal, the state court holding need be both incorrect *and* also objectively unreasonable. *Id*. at 409, 411.

Federal courts review *de novo* questions of federal law and mixed questions of federal law and fact, *Freund v. Butterworth*, 165 F.2d 839, 861 (11th Cir. 1999) (*en banc*), but presume valid the state court's factual findings absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Robinson v. Moore*, 300 F.3d 1320, 1342 (11th Cir. 2002). State court decisions interpreting state law must be respected unless found to be unconstitutional. *Striger v. Black*, 503 U.S. 222, 234-35 (1992).

### B.     *Ineffective Assistance of Counsel*

*Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. The *Strickland* Court established a two-part test: (1) whether counsel's representation was deficient or below an objective standard of reasonableness under the prevailing norms, and (2) whether the deficient performance prejudiced the defendant such that the result of the proceeding would have been different absent the deficiency. *Id*. at 687-88. The Eleventh Circuit further clarified that the petitioner carries a *heavy* burden to prove deficiency in counsel's performance. *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006) (emphasis added). For a petitioner to show deficient performance, he must establish that no competent counsel would have taken the allegedly violative action. *Id*.

### C.     *Procedural Bars to Federal Habeas Review*

8

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Furthermore, because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. *Id*. at 845.

Therefore, to proceed here in Federal Court, Pietri needed to present to the Florida Supreme Court each and every issue raised in this Petition. *See id*. Additionally, Pietri needed to raise these issues at the Florida Supreme explicitly on Federal grounds. *See Baldwin v. Reese*, 541 U.S. 27, 33 (2004).

### IV. Analysis

#### A. *Ineffective Assistance of Counsel*

As an initial matter, Pietri asks for an evidentiary hearing on some of the issues discussed below. The record, however, shows that the state tribunals accorded Pietri ample hearings at which he was able to develop a factual basis for the implicated issues. No hearing is thus warranted. *See Breard v. Greene*, 523 U.S. 371, 377 (1998).

##### 1. *Evidence at the Guilt Phase and Trial Strategy*

The Defense had argued at trial that Pierti's life was so ruled by cocaine that it was impossible for him to have formed the necessary intent for first-degree murder. Pietri's intense focus on cocaine made it such that Officer Chappell's shooting was

9

reactionary, as opposed to premeditated. In connection with this, Pietri alleges ineffective assistance of counsel on two fronts: (1) that trial counsel's investigation and presentment of Peitri's cocaine addiction as was deficient, and (2) that trial counsel should have focused more on a defense of voluntary intoxication.

Pietri's first argument is based on the assertion that trial counsel was ineffective for relying solely on Pietri's own testimony to show that his addiction to cocaine precluded him from forming the necessary intent for first-degree murder. Pietri maintains that counsel should have conducted more interviews with Pietri's family members, should have more thoroughly reviewed Peitri's prison records or given them to Dr. Caddy, and should have had Pietri examined by a neuropharmacologist.

This claim must be rejected because Pietri cannot show that he was prejudiced by trial counsel's alleged ineffectiveness. *See Strickland*, 466 U.S. at 687. During the penalty phase, the jury did hear about Pietri's cocaine addiction. Dr. Caddy testified that Pietri's cocaine addiction rendered his judgment reactive thereby precluding premeditation. At earlier evidentiary hearings, other experts that Pietri claims should have testified were unable to say conclusively that Peitri himself did not form the requisite mal-intent at the time of the murder. Rather, they testified that someone in Pietri's position would likely have had reactive judgment, the same general idea Dr. Caddy expressed. The other experts' testimony, therefore, would have been cumulative at best. Counsel's performance was not deficient in this regard. The claim is DENIED.

Pietri's second argument is based on voluntary intoxication. There is no evidence that Pietri was intoxicated at the time of the murder. Dr. Caddy simply opined that Peitri *may have* been intoxicated. The facts on record, however, show that Pietri had not taken

10

cocaine for many hours prior to the shooting. He even admitted that to one of his experts, Dr. Lipman. Pietri was granted an evidentiary hearing on this issue, after which the state court found no admissible evidence of intoxication at the time of the murder. In fact, Pietri's own expert, Dr. Lipman, opined that Pietri's blood cocaine level would have been quite low when he killed Officer Chappell. Counsel's strategic decision to not focus on the voluntary intoxication defense did not render counsel Constitutionally ineffective. The claim is DENIED.

### 2.     *The Improperly Obtained Confidential Documents*

Pietri claims that a prosecution representative misappropriated trial strategy documents from defense counsel's office and that defense counsel did nothing to remedy the matter. Pietri goes on to argue that this misappropriation tainted the trial. Furthermore, defense counsel's failure to obtain relief on the issue rendered counsel ineffective under the Sixth Amendment.

This claim fails because Pietri cannot show that he suffered prejudice. The trial judge did hear the issue on two separate motions, but denied relief. I cannot disagree with that ruling because: (1) the documents had no impact on or relation to the defense's trial strategy, and (2) there is little proof that the state ever even saw the documents.

The subject documents were taken in June 1989. At that time defense counsel's strategy was to point the finger at another individual and hold the state to its burden. In December 1989, though, Pietri voluntarily confessed the murder to his counsel, thereby necessitating a complete change in strategy. The documents, even if prejudicial before, became innocuous at this point. They contained nothing of relevance to Pietri's actual trial strategy. Furthermore, Pietri does not allege that the taking of the documents had

11

any impact on the decision to change trial strategy; his own confession prompted the change. Pietri cannot show prejudice.  The claim is thus DENIED.

### 3. *Voir Dire*

Pietri claims that the presence of jurors Carrol, Collins, and Utterback prejudiced him, and that his trial counsel was ineffective for not obtaining additional peremptory challenges to excuse those individuals.  Of the three, only the claim respecting Juror Carrol can be decided here, because the other claims as to the other jurors remain unexhausted.  Pietri did not properly bring them before the Florida Supreme Court. *See supra*.

During *voir dire*, Juror Carrol first stated that he would automatically recommend the death penalty for someone found guilty of murdering a police officer.  The trial judge then engaged Carrol in further questioning and explanation.  Upon understanding the proper criteria, Carrol avowed that he could follow the law and would not vote for the death penalty automatically upon a guilty verdict.  Furthermore, Carrol's other responses indicated that he might be favorable to the defense.  His own son was suffering from substance addiction.  Carrol stated that he could conceive that extensive drug use may impair a person's ability to form a specific intent. Juror Carrol's presence on the jury did not prejudice Pietri.

Based on the foregoing, Pietri's claims pertaining to juror Carrol are DENIED. The claims related to jurors Collins and Utterback are DISMISSED *as unexhausted*.

### 4. *Sufficiency of Mitigation Evidence*

Pietri argues that trial counsel was deficient in presenting mitigation evidence. This mitigation-evidence argument was litigated thoroughly in state-court-post-conviction proceedings at both the trial and appellate levels. The state court found the argument wholly unmeritorious, which result is consistent with Eleventh Circuit law: "[A]t a sentencing proceeding, counsel is not required to present all mitigation evidence …. compatible with counsel's strategy." Even more, counsel's complete failure to present available mitigation evidence does not necessarily constitute deficient performance. *Id*.

In the present case, Pietri's trial counsel presented eight witnesses—six lay witnesses and two experts—favoring Pietri's contentions. The lay witnesses described Pietri's positive personality traits, his unfortunate youth, and his eventual cocaine addiction. The experts then tied lay testimony into the defense's mitigation theory. The experts first reiterated at length Pietri's unfortunate upbringing and his habitual substance abuse. They then weaved in the theory that Pietri's situation merited mitigation. The entirety of the testimony—from the record on hand¬ reflects an earnest and valiant attempt to convince the jury that Pietri's drug dependency precluded his crime from rising to the culpability level required for capital punishment.

Pietri's sufficiency-of-mitigation-evidence-based claim fails on both *Strickland* prongs, and is thus DENIED.

### B.     *Claimed Innocence of the Death Penalty*

Pietri claims to be "innocent of the death penalty." The Court understands this to mean that he claims his actions do not merit imposition of the death penalty. Pietri also claims that the imposition of the death penalty in his particular case is violative of the

13

Eighth and Fourteenth Amendments. Essentially, Pietri reformulates and reiterates his other arguments, adds a few new ones, including the argument that had he not killed a police officer he would likely have received a plea bargain, to create a singular aggregate argument that culminates in a claim that the his sentence is Constitutionally infirm. His filings, however, are devoid of any reasonable basis for this assertion. The Government maintains that this claim is unexhausted. Pietri has not contested the Government's rebuttal. The record is somewhat unclear, but does indicate that the exact issues raised in respect to this claim were either never presented to the Florida Supreme Court, or not raised explicitly on Federal grounds. The claim is DISMISSED *as unexhausted*.

### C. *Claims Regarding Jury Instructions*

Pietri's claim regarding impropriety of the "felony murder" aggravator instruction is DENIED. Peitri had escaped from prison, stolen a vehicle, engaged in illegal drug use, committed a burglary, and was speeding away from the scene of the crime immediately prior to shooting and killing Officer Chappell. There is no basis here for habeas relief.

Pietri's remaining claims concerning jury instructions were either never presented to the Florida Supreme Court or never explicitly raised on Federal grounds. They are DISMISSED *as unexhausted*.

### D. *Pietri's Remaining Unexhausted Issues*

Pietri claims that trial counsel was ineffective by failing to object to allegedly impermissible statements made by the prosecutor. Pietri brought this claim before the trial court in his post-conviction proceedings, but never raised it to the Florida Supreme Court. The claim is thus DISMISSED *as unexhausted*.

14

Pietri's challenge to the constitutionality of Florida's Rules of Professional Conduct, which prevent him from thoroughly investigating jury misconduct, was never appealed to the Florida Supreme Court.  It is DISMISSED *as unexhausted*.

Pietri's claims alleging the trial court's failure to consider mitigation evidence were not properly appealed to the Florida Supreme Court on federal grounds.  They are DISMISSED *as unexhausted*.

Pietri's *Johnson v. Mississippi*, 486 U.S. 578 (1988), claim—that the jury was improperly allowed to consider hearsay evidence of uncharged collateral crimes—was never presented to the Florida Supreme Court on federal grounds.  It is DISMISSED *as unexhausted*.

Pietri claims that the trial court erred in refusing to instruct the jury that mercy was a proper consideration for penalty recommendation.  Peitri never appealed this claim to the Florida Supreme Court on federal grounds.  It is DISMISSED *as unexhausted*.

Pietri's claims that his trial judge was biased against him.  Pietri, however, did not bring this claim to the Florida Supreme Court on federal grounds.  It is DISMISSED *as unexhausted*.

### E.     *The Admittedly Unsustainable Claims*

Pietri concedes that his insanity claim is unripe.  The claim is DISMISSED *without prejudice*.

Pietri concedes that his challenge to the constitutionality of Florida's Death Penalty Act is not cognizable because *Ring v Arizona*, 536 U.S. 584 (2002), is not to be applied retroactively.  *See Schiro v. Summerlin*, 542 U.S. 348 (2004).  The claim is DENIED.

### F. The Cumulative Error Claim

Pietri, lastly, argues that all his combined claims render the system flawed and, thus, his capital sentence is unconstitutional. This claim is futile because each and every one of Pietri's claims either lacks merit or is procedurally unavailable in federal court. The claim is DENIED.

\* \* \*

For the reasons set forth above, the Petition for Writ of Habeas Corpus is **DENIED**. The Clerk shall **CLOSE** this case.

**DONE and ORDERED** in Chambers at Miami, Florida, this 18th day of April 2008.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:

*Counsel of Record*